Good morning. May it please the court. I'm Lowell Sturgill from the Department of Justice representing the appellants, who are several Bureau of Prisons officials who are sued in their individual capacities for damages under a Bivens theory. I'd like to reserve two minutes of my time for rebuttal, please. Based on this court's recent decisions in Silva and Logston, I think it's pretty clear that the district court should not have extended a Bivens remedy to the claims Mr. Mohamed brings here. The more interesting question is whether the court has jurisdiction over our appeal under the collateral order doctrine. We feel like the court clearly does, and I'd like to begin with that. The Cohen test from the Supreme Court has three factors. One of the factors is whether the argument the government is making is important and separate from the merits. So the Supreme Court has made it clear that when an individual defendant moves to dismiss based on an argument that special factors preclude extending a Bivens remedy, that raises serious separation of powers concerns. And Will's Supreme Court said that separation of powers concerns are important enough to merit an immediate appeal under the collateral order doctrine. There's a second aspect of importance, and that's that the Bivens special factors doctrine also serves the same important purposes as qualified immunity. I'm sorry. So qualified immunity and Bivens special factors are meant to protect the smooth functioning of government and to protect against chilling government officials from exercising their discretion in appropriate ways. But they're different conceptually. They're different in kind, aren't they? Qualified immunity is affirmative defense. It's also intended to relieve the government defendant from the burden of trial. Bivens remedy is not affirmative defense. It's a question of whether the Bivens theory extends liability. I don't see how you can really equate the two. So, Your Honor, respectfully, I think that the focus should be on, again, the Supreme Court's holding that when special factors preclude extending a Bivens remedy, the reasons for that are the same as qualified immunity. And so the focus should be on the special factors and not the fact that Bivens itself creates a remedy where the Supreme Court has done so. But when you look at it that way, I think it just completely maps onto the qualified immunity analysis. Well, the other circuits that have addressed this don't agree with you on that and have drawn that distinction. So how do you overcome the reasoning in cases like Graber? So, honestly, I think, first of all, the reasoning is just wrong for the reasons I just gave you. But second, Judge Hardiman descended from the Graber opinion, and we think his opinion is correct. So you have a choice. Well, why is his opinion correct? Well, again, because, well, first of all, even putting aside the qualified immunity question, the fact that Bivens special factors analysis raises important separation of powers concerns is sufficient by itself to satisfy that. Well, is that the only separation of powers concerns in play here? After all, what you're asking us to do is recognize an exception to a statute, 28 U.S.C. 1291, to expand the collateral order doctrine. Why doesn't that implicate a complete separation of powers concern in that shouldn't Congress be making that decision as opposed to the court? So on that point, what we're asking the court to do is just follow the Cohen decision from the Supreme Court, which is a matter of step. Well, no one else has. And so why should we? To again answer your question or to try to answer your question, interpreting 1291 the way Cohen did is an exercise in statutory interpretation. So merely trying to improperly interpret a statute and do it consistent with Congress's intent, that doesn't itself raise separation of powers concerns in the same way that Egbert and Abbasi have said that extending a Bivens remedy raises a separation of powers concern. So I'm sorry. Go ahead. You know, I understand the distinction between the majority and dissent in those cases, but this separation of powers injury seems highly conceptual, esoteric in many senses. Is that really the kind of injury that we need to invoke the, you know, unusual exception of the collateral order doctrine here? You know, the flip side is the government waits a couple of years to vindicate its immunity from these suits. So, Your Honor, there are no unimportant separation of powers violations. I'm not aware of any Supreme Court case that said, oh, well, here's a separation of powers violation, but it's unimportant and it can wait. We can overlook it. We can bypass it. Well, no one's claiming that there's a separation of powers violation, are they? Is that what you're saying? Well, yes. That if we don't take jurisdiction, we violated separation of powers. Is that your argument? I think what we're saying, well, let me just say, I think you could say it amounts to that. In Egbert, the Supreme Court said, and it's stressed that whenever a court extends a Bivens remedy beyond Davis Carlson and Bivens itself, whenever the court does that, in quotes, it places great stress on separation of powers. So that's a given, and that's the basis of our separation of powers argument. And then Will says, okay, well, separation of powers, even a threatened separation of powers violation is the kind of important question that merits an immediate appeal under the collateral order doctrine. But Will also warns against extending interlocutory appeal beyond qualified immunity to other types of pretrial dismissals in applying the collateral order doctrine on the grounds of putting the government to the burden of trial. How do we deal with that language in Will? Well, first of all, that would relate to our qualified and immediate argument, but it doesn't relate to our separation of powers argument. Will itself said, inciting Nixon, that a separation of, even a threatened separation of powers violation is important enough to allow a collateral order. So that's all you need to do. That's all you need to focus on to agree with us. Well, I need to push this a little bit because we do have this statement in Will, which, by the way, the Gravery majority mentioned, Judge Hardiman mentioned. It's on the table relative to whether we have jurisdiction. They both acknowledge that. Are you saying it isn't relevant? I'm saying it's relevant. Are you disagreeing with both the majority and the dissent in Graver in that regard? Well, it's potentially relevant to one of the grounds that we're relying on, and that is the similarity between qualified immunity and Bivens special collectors. Well, let's take it back to the Cohen test itself. It's relevant to the third element of Cohen, isn't it? It's relevant, but not persuasive here. Why not? You've got this statement in Will. We're under an obligation, even if it's dictum, as was said in certain parts of Graver. We have to take that seriously. Should we not take it seriously? Well, maybe let me get it this way. I don't believe Will said that qualified immunity is the only ground that should allow an immediate appeal. Well, no, nobody could say that because there are other exceptions that fit the collateral order doctrine. But Will said, and I'm going to quote it, simply abbreviating litigation troublesome to government employees were important enough for collateral order treatment, and collateral order appeal would be a matter of right. Whenever the government lost a motion to dismiss under the TOR Claims Act, or a federal officer lost one on a Bivens action, or a state official was in that position, isn't that a statement that we have to take seriously? Sure, and what the court was referring to is the judgment bar, right? And what the court said is, if I could finish. It was in that case, but it was making a statement about extending the collateral order doctrine, and that goes to element three of the Cohen test. Why is a Bivens extension issue not effectively reviewable after judgment? Because separation of powers violations are important per se. They can't be ignored. You can't slough them off and just say, oh, well, we can wait. Every time there's a separation of powers violation, the court has done something it's not supposed to do, and it violates the relationship between the bridge. Wouldn't that go to a court's dismissal, you know, 12B6 dismissal of almost any claim against a state or federal government official? No, Your Honor. There's a complete difference between a separation of powers argument and something like personal jurisdiction or... Why would that be a separation of powers argument? Why isn't there a separation of powers tension there? I don't believe any court has ever addressed personal jurisdiction or venue or... I didn't say personal jurisdiction. Did I even say that? I'm giving you examples of other... Well, I didn't say that. Well, let me try it this way. The plaintiffs give you a choice. I think you have a choice today. There are two ways to look at... By the way, if we go your direction, we'd be creating a circuit split, correct? That's correct. All right. So you have a choice. There are only two options on the table. What the plaintiffs are telling you is that a Bivens special factor order is immediately appealable if it is conjoined with a qualified immunity appeal. And we're saying it's immediately appealable alone. Well, their view can't be right because the only theory that would make it right is if it's a theory of pendent jurisdiction. That, oh, gee, well... And that we know that Bivens special factors orders are antecedent to either the merits or qualified immunity. So the only theory they can have that would work is pendent jurisdiction. Supreme Court does not like theories of pendent jurisdiction. In their own case in Himmelfarb, Himmelreich, said they rejected the idea of pendent jurisdiction. So in essence, their position doesn't have a theory that makes any sense. Okay. I think I understood everything you said, but I didn't understand your point. And I don't mean to belittle it. I've just confessed that I didn't understand the point. So that's true. But why... What... What was your point behind that? I mean, that is true. If qualified immunity under Mitchell v. Forsyth is immediately appealable, and if you conjoin it with some other issue that is not immediately appealable, in their view, you know, their view, you know, for example, an extension of Bivens or, oh, anything, personal jurisdiction, then you would only have appellate jurisdiction if it's under supplemental appellate jurisdiction, pendent jurisdiction. But what does that establish? I mean, what is your point from all that? So at the highest level of generality, the point is they've given you an argument, and their argument doesn't work. So the only other argument you have is ours. You have a binary choice. Either we know that these orders are appealable. They're giving you a reason why it can only be appealable when it's conjoined with a qualified immunity appeal. That doesn't work because it ends up in a pending, depending on pendent jurisdiction. And so it must be ours. But the second way is the Supreme Court exercised jurisdiction, addressed special factors arguments without addressing qualified immunity in both Wilkie and Hernandez. And did they, in Wilkie and Hernandez, did the Supreme Court expressly adjudicate the immediate appealability of the issue? It didn't explain. Yeah, it didn't address it, did it? No. And so in Webster Falls, didn't the Supreme Court tell us that whenever an issue is lurking in the background that a case cannot stand for the proposition only because it is lurking in the background? I mean, we have lots of times that the Supreme Court, that litigants come before us and say, well, the Supreme Court adjudicated the merits of X, and so they must have, you know, figured out that there was jurisdiction. And the truth is, you know, maybe nobody picked up that there was an issue of jurisdiction. Now, I grant you that those cases are not controlling authority on this. We're not saying they're controlling, but I do think you're in a position of trying to figure this out, right? Those cases did what they did. And so how did they get there? So the only way they could have gotten there is either that these orders, special factors orders, are immediately appealed on their own, or else it's dependent jurisdiction. If the government is so concerned about separation of powers and wanting to get this up on appeal quickly, weren't there other options that were not even pursued? Couldn't 1292 have been a vehicle? Couldn't 54B have been a vehicle? Wasn't there also a qualified immunity ruling by the district court in this case that could have carried the Bivens claim? It seems if the government is so concerned about this, weren't there other avenues to get this case here other than just taking the straight Bivens appeal? Well, the collateral order doctrine gives the party the right to an appeal. 1292B, of course, is discretionary, and a qualified immunity appeal requires a judgment about whether... No, I'm just saying, weren't there other options? Well, even conceding there were other options, that doesn't mean that we waived anything or that the court shouldn't take seriously our arguments on collateral order. I see my time is gone. Go ahead and finish your comment there. I actually may have... I do have another question on the separation of powers and injury. I mean, Bivens has been with us for 40 years, and to the extent that there's this tussle between the federal judiciary creating a remedy out of whole cloth versus the congressional legislative authority to do so, they've sat on their hands for 40 years, so Congress doesn't seem to be particularly offended by what the federal courts are doing, have done, and federal courts, maybe to their credit or not, have not extended Bivens. So is there really a fundamental dispute between the legislative branch and the judicial branch on these questions? So our answer would be you can't, I think, read anything from the silence from Congress because they don't do things for any number of reasons. It's a political process. They don't have the votes. They're working on other things. So I don't think it's fair to read from their inaction here, particularly because the Supreme Court and Egbert and Abbasi have said there is. So the judicial, sorry, judicial branch itself has acknowledged that there's major separation of powers concerns addressed here, and I think that's enough to take it seriously. All right, counsel, we appreciate your argument. Your time's expired. Ms. Dobkin, whenever you're ready. Thank you. Good morning, your honors, and may it please the court. Madeline Dobkin appearing on behalf of Kalfan Muhammad, the appellee in this matter. I'm a student appearing under the Student Practice Act supervised by my professor, Matthew Cushing, who's in the courtroom with us today. This court lacks jurisdiction and this appeal should be dismissed. I'd like to begin by responding directly to the appellant's emphasis on separation of powers concerns. First, this court should not consider separation of powers in support of the jurisdictional analysis because the separation of powers is the entire merits issue. As the Supreme Court said in Egbert, the special factors question is entirely about separation of powers, and this court in Auraria Student Housing, the campus village, said that we don't consider jurisdictional arguments that presume the correctness of the appellant's merits arguments. Second, Judge Matheson, you're exactly correct in that the separation of powers is one of the strongest points in Mr. Muhammad's favor here. In 53 years, Congress has never once legislated against Bivens, and as we describe in our briefs, has implicitly approved of Bivens in subsequent legislation. However, while Congress has never legislated against Bivens, Congress has legislated against appeals of non-final orders, which is exactly what we have here today. The appellants have basically asked this court to expand its own jurisdiction in contravention of Section 1291. Could I just ask you a question about that? I was interested in the brief, I guess it's the supplemental brief that you filed. On page 18, the brief says, exercising jurisdiction here would open the floodgates to hundreds of appeals each year and violate separation of powers. I'm not going to ask you about the floodgates point, but could you explain why it would actually violate separation of powers? Yes, Your Honor. Section 1291 prohibits appeals of orders that are not final, and here that's exactly what we have. The denial of a motion to dismiss is an unappealable interlocutory ruling. It ensures that the litigation will proceed below, so it cannot possibly be a final order. And this goes to the collateral order doctrine analysis here. Specifically, I'll remind the court that it is the appellant's entire burden to prove each and every element of the collateral order doctrine, and here the appellants have not and indeed could not do so. I'll go backwards and direct the court to the third element of the collateral order doctrine, the effectively unreviewable on appeal from final judgment requirement. But isn't the point there that once the case proceeds to trial, the injuries occur? You can never unring the bell of discovery and trial, and to that extent, the judicial creation of a, the improper judicial creation of a remedy and subjecting the defendant of the United States to the burden of litigation, much like, you know, conceptually like qualified immunity, the process is the injury, and that can never be, can never be repaired upon, you know, a normal appellate review. Could you respond to that? Yes, Your Honor, two points in response to that. First, qualified immunity is the proper mechanism to protect against the costs and burdens of litigation. As the appellants concede on page 37 of their reply brief, the exclusive purpose of Bivens is to deter official misconduct, and so to the extent that there are costs and burdens of litigation, that's the exact purpose of Bivens. Additionally, the government is amply protected in this sense. Well, that's the purpose of a Bivens claim properly framed. And, you know, the merits argument here is this is not a viable Bivens claim. Your Honor, the jurisdictional question comes first, and here the Supreme Court in both Will v. Halleck and Swint v. Chambers County Commission has repeated that the burdens of trial are insufficient to exercise collateral order jurisdiction. They are not considerations that should be brought in support of collateral order jurisdiction, and that was the argument of the federal agents in Will v. Halleck. They argued that the denial of the motion to dismiss would subject them to burdens of litigation, but the Supreme Court in Will refused to extend collateral order jurisdiction. And, of course, on page 353 of Will, as Judge Mathison said, we have the Supreme Court using our case, the denial of a Bivens motion to dismiss, as an example of a case that does not fall within the collateral order doctrines purview. And I think that sentence in Will compels this Court's ruling. Is that passage on 353 of Will, are you predicating that on the notion that there has to be an immunity from suit? Yes, Your Honor. The qualified immunity appeal would have been necessary for this Court to exercise jurisdiction here because without it, there's no entitlement not to stand trial. And that was the basis of the Court's analysis in Mitchell v. Forsythe in extending the collateral order doctrine to qualified immunity. The Court emphasized that qualified immunity is a right not to stand trial. And so the government is, maybe they haven't used these precise words, but aren't they, in effect, arguing that an extension of Bivens beyond the three areas that it has already been applied by the Supreme Court does envision protection against suit? After all, there's no statute that required the Supreme Court in Mitchell v. Forsythe to say that qualified immunity is a protection from suit. It was implicit, perhaps, in the Nixon case with absolute immunity. And so aren't they, in effect, arguing that because of the separation of powers, the important interest that Judge Hardiman had noted in his dissent that this is another area where there should be an immunity from suit as well as protection against liability? No, Your Honor, because here there's no vested right not to stand trial. There's a cause of action. And I agree that the cause of action sets a high bar for plaintiffs, but that can't be read as a vested right for defendants not to stand trial. Just because it's a high bar does not mean that it gives the defendants a right. And as you bring up Judge Hardiman's dissent, it's actually not entirely clear that Judge Hardiman would have agreed with the appellants here today. This goes to the conclusiveness element of the collateral order doctrine. There's a key procedural distinction between this case and that engraver, and that is that we have the denial of a motion to dismiss, whereas the Third Circuit was presented with a denial of a motion for summary judgment. And that was critical to Judge Hardiman's analysis of the conclusiveness element. On page 617 of Judge Hardiman's dissent, he identifies three things that make him comfortable that that order was conclusive. Pleadings, discovery, and summary judgment record. Here we have one of those three things. We have the pleadings, and so to the extent that Judge Hardiman felt there was enough factual development in engraver to find that order conclusive, it's not clear that he would have felt the same here. And I'd remind the Court that Judge Hardiman's opinion did not persuade the majority of the Third Circuit. The majority in the Third Circuit got it right because a number of the concerns that Judge Hardiman emphasizes have been rejected by the Supreme Court already. You know, Mr. Sturgill did make a point that it's not particularly coherent to Latch and Bivens' appeal to a qualified immunity appeal. You know, I don't see, I think the point is that's not doctrinally coherent either. That the, your theory should be that the Bivens' appeal occurs you know, at the end of the case when there's a final judgment. Can you respond to that? Yes, Your Honor. In the vast majority of cases, Bivens has been linked to a qualified immunity appeal. But in the... I know. Is that right? Yes, Your Honor. But in the few cases that it's not, I can't speak to how the government will get into this Court's jurisdiction all I can say is that this Court must have jurisdiction. And here we have one question, the Bivens' question and it does not satisfy all three elements of the collateral order doctrine and therefore this Court cannot exercise jurisdiction. I... Could I just ask you, Judge Bachrach was mentioning that Bivens' extensions have been rarely recognized. In fact, I don't think the Supreme Court has recognized one for 44 years. Wouldn't interlocutory review be more in keeping the separation of powers in the sense that an appellate court can more promptly correct a district court's overstepping into the legislature's domain? And in answering that question, why shouldn't we recognize the fact that Bivens is pretty much stuck in neutral? I mean, there have been no extensions and yet here we have a district court decision extending Bivens, so why isn't the government correct that to the extent that we have a separation of powers concern, let's address it now rather than later and then we don't have a separation of powers concern. Three points in response to that, Your Honor. The first is that I recognize that Bivens is a narrow doctrine, but so is the collateral order doctrine, and when we're putting narrow versus narrow, the jurisdictional question comes first. Second, to the extent that this court believes it knows how it would rule on the merits, this court in United States v. Springer in 2017 said even if the merits question is more easily resolved, jurisdiction is a threshold question. Additionally, it's not clear that resolving this case on the merits now would have some practical advantage because there are claims pending below, and as Judge Backracker, Kelvie Benson opinion emphasizes, when an appeal is likely to return to the courts, it's not clear that it's a matter of efficiency to hear the merits now. And then I'd also emphasize that in Van Collenberg, I hope I'm saying that right, Van Collenberg v. Biard, the Supreme Court said that speeding litigation along is not a basis for collateral order jurisdiction. And as to the separation of powers concerns, I would note that there's nothing about that, the separation of powers concerns, that is not reviewable on appeal from final judgment. I'd like to – Well, except for the point that Judge Timkovich was making in that it's going to take another, I don't know how long, a year or two, where an extension of Bivens may be in place in the case when in the end maybe it shouldn't be. So, I guess related to that, maybe one way to ask you this would be, how is a Bivens extension more reviewable after final judgment than qualified immunity? Because, Your Honor, the denial of a motion to dismiss is reversible. Qualified immunity is a right not to withstand litigation. And so, once that immunity is denied and the litigation takes one more step in the district court, it is effectively unreviewable. But here, this court can decide the merits question on appeal from final judgment and FDIC V. Meyer illustrates that. In order to address Meyer's impact in their reply brief, I'd also note that Meyer doesn't stand alone. This court, in at least two cases, has reversed jury verdicts for Bivens plaintiffs finding that the Bivens cause of action was improper. I'd like to briefly address the conclusiveness element of the collateral order doctrine because an order is not conclusive where we expect that it will be revisited or reassessed in the ordinary course of litigation. That's exactly what we have here. The district court will continue to reassess the propriety of the Bivens cause of action before trial. The Department of Justice recognizes this. They recognize that the Bivens extension issue could continue to be in play but  that different from qualified immunity because it potentially could continue to be in play. Because immunity is a term that